IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| JOHNNY LITMAN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 1:13-cv-43 (WLS) |
| | : | |
| RAY MABUS, Secretary of the Navy, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant Secretary Ray Mabus' Motion for Judgment on the Pleadings (Doc. 41) as to all remaining claims in this action. The Court finds that the Motion is now ripe for review.

## PROCEDURAL AND FACTUAL BACKGROUND

### I.  Procedural Background

Plaintiff Johnny Litman, a licensed attorney proceeding *pro se*, brought suit against Ray Mabus, the Secretary of the Navy, and Josie Dristy, the director of the Navy's Office of Acquisition and Integrity (AIO), for claims of race, age, and disability discrimination and retaliation. Litman alleges that he was employed as an attorney for the United States Marine Corps, within the U.S. Department of the Navy. On October 22, 2014, the Court dismissed several of the claims raised in Litman's Third Amended Complaint. (Doc. 30.) Litman appealed that Order to the Eleventh Circuit, but his appeal was dismissed as premature. (Doc. 40.) On April 27, 2015, the Court granted Defendant Dristy's Motion to Dismiss the remaining claims against her. (Doc. 42.) The only claims remaining in this action are Litman's Count Three Title VII race-based hostile work environment claim against Mabus and Count Four Age Discrimination in Employment Act (ADEA) claim against Mabus. (*See* Docs. 24; 30 at 10.)

Defendants Dristy and Mabus filed the now pending Motion for Judgment on the Pleadings on April 23, 2015. (Doc. 41.) On April 27, 2015, the Court noticed Litman of the

1

Motion and ordered him to respond. (Doc. 43.) Litman filed a response on May 18, 2015 (Doc. 44), and Mabus filed his reply on June 2, 2015 (Doc. 45). The Motion is now ripe for review as to the remaining claims against Defendant Mabus and moot as to the claims against Dristy since the Court has already dismissed all claims against her.

## II.   Factual Background

Because Mabus' Motion for Judgment on the Pleadings relies primarily on the argument that Litman failed to administratively exhaust his claims, the Court herein provides factual background, based on Litman's Third Amended Complaint and EEO documents that are central to his claims, as to the timeline of Litman's allegations, his communications and complaints with equal employment opportunity (EEO) counselors, and the EEO office's and Equal Employment Opportunity Commission's (EEOC) processing of his complaints.

On July 12, 2012, Litman made a request for a meeting with an EEO counselor. (Doc. 45-1 at 7.) On July 19, 2012, Litman met with an EEO counselor. (*Id.*) On October 18, 2012, Litman submitted his first formal EEO complaint (hereinafter "first EEO complaint"). (*Id.* at 1-6.) That complaint made allegations of race and age discrimination related to: the AIO's April 12, 2012 notice that Litman's government contracting privileges had been suspended; a May 7, 2012 widely-distributed memorandum from the AIO informing the Acquisition Community at Large and Marine Corps Logistics Command employees that Litman's contracting privileges had been suspended; and a June 19, 2012 letter from the AIO in response to Litman's opposition to the suspension that Litman claimed to be "defamatory and erroneous." (*Id.* at 1-6.) On December 11, 2012, that complaint was dismissed by the Deputy EEO Officer for the United States Marine Corps for the following reasons: (1) the suspension of Litman's contracting privileges was not an adverse employment action because his contracting privileges were not related to his employment as a civilian attorney with the U.S. Marine Corps, and (2) Litman failed to meet with an EEO counselor within forty-five days of the alleged incidents except for the June 19, 2012 letter from the AIO. (*Id.* at 16-19.)

On December 7, 2012, Litman again requested to meet with an EEO counselor and met with one on the same day. (*Id.* at 20.) At that meeting, during his final counseling interview, and in his subsequent second formal EEO complaint (hereinafter "second EEO com-

plaint"), dated March 20, 2013, Litman made allegations of race and age discrimination based on the following incidents: (1) his nameplate was removed from his office door and (2) his job responsibilities were changed. (*Id.* at 20-24, 28-30, 31-33.) On January 7, 2014, the Deputy EEO Officer for the United States Marine Corps issued a determination dismissing Litman's second EEO complaint because Litman filed the above-styled civil action alleging the same allegations on March 20, 2013, the same day he filed his second EEO complaint. (*Id.* at 25-27, 34 n. 1.) The EEO counselor's report noted that Litman had mentioned a hostile work environment claim in his final interview but had failed to include one in his formal complaint. (*Id.* at 21.) Litman appealed this dismissal to the Equal Employment Opportunity Commission (EEOC) Office of Federal Operations. On May 29, 2014, the EEOC affirmed the dismissal. (*Id.* at 34-39.)

## DISCUSSION

### I.   Standard of Review

Motions for judgment on the pleadings are allowed by Federal Rule of Civil Procedure 12(c) and are subject to the same standard of review as motions to dismiss filed under Rule 12(b)(6). *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002). The Court therefore applies the following standard of review applied to Rule 12(b)(6) motions.

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted. A motion to dismiss a plaintiff's complaint under Rule 12(b)(6) should not be granted unless the plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008)). "Stated differently, the factual allegations in the complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'" *Edwards*, 602 F.3d at 1291 (quoting *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007)). However, the plaintiff need not allege all the elements of proof of his claim in his complaint in order for the claim to survive a Rule 12(b)(6) motion to dismiss. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).

While the Court must conduct its analysis "accepting the allegations in the complaint as true and construing them in the light most favorable to the Plaintiff," *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a plaintiff's pleadings the Court must "make reasonable inferences in Plaintiff's favor, 'but [is] not required to draw Plaintiff's inference.'" *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)), abrogated on other grounds by *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Supreme Court instructs that while on a motion to dismiss "a court must accept as true all of the allegations contained in a complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Twombly*, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a complaint).

Here, Plaintiff Litman is proceeding *pro se*. The Court acknowledges that,

> a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Hyland v. Kolhage*, 158 F. App'x 194, 196 (11th Cir. 2005) (internal quotations and citations omitted). However, the Court also recognizes that "even in the case of *pro se* litigants this leniency does not give a court license to serve as a *de facto* counsel for a party, . . . or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted), overruled on other grounds as recognized in *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). That is particularly true here where Litman is a licensed attorney.

In summary, "[c]ourts show leniency to *pro se* litigants, however, *pro se* litigants are still required to conform to the procedural rules, and the court is not required to rewrite deficient pleadings." *Jacox v. Dep't of Def.*, 291 F. App'x 318, 318 (11th Cir. 2008) (citing *GJR Invs.*, 132 F.3d at 1369). "Where it appears that a more carefully drafted complaint might state a claim, the district court should give a *pro se* plaintiff an opportunity to amend [his] complaint instead of dismissing it." *Schmitt v. U.S. Office of Pers. Mgmt.*, 403 F. App'x 460, 462 (11th Cir. 2010) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam)).

4

Finally, in reviewing a motion to dismiss or a motion for judgment on the pleadings, a court "may consider only the complaint itself and any documents referred to in the complaint [that] are central to the claims." *Ball v. JPMorgan Chase Bank, N.A.*, 1:12-cv-132, 2013 WL 5592496 at *2 (M.D. Ga. Oct. 10, 2013) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam)). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## II.  Analysis

Mabus argues that neither of Litman's remaining claims have been administratively exhausted and should therefore be dismissed. Federal employees seeking redress in federal court for employment discrimination must first seek relief in the agency that has discriminated against them. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832-32 (1976); *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999). Therefore, failure to administratively exhaust is an appropriate ground upon which to base a motion to dismiss or a motion for judgment on the pleadings. *See Brown*, 425 U.S. at 835.

In order to begin the exhaustion process, a federal employee must "initiate contact with an equal employment opportunity counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). "The prerequisite of timely contact with an EEO counselor is not jurisdictional, and is subject to waiver, estoppel and equitable tolling." *Robinson v. Joajanns*, 147 F. App'x 922, 924 (11th Cir. 2005) (citing 29 C.F.R. § 1614.604(c); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). After initiating contact with an EEO counselor and participating in a final interview, an employee is issued a notice of his right to file a formal complaint, which also must be done as a part of the exhaustion process. 29 C.F.R. § 1614.105(d). Equitable tolling applies "when the defendant misleads [plaintiff] into allowing the statutory period to lapse, when [plaintiff] has no reasonable way of discovering the wrong perpetrated against [him], or when [plaintiff] files a technically defective pleading and in all other respects acts with the proper diligence which statutes of limitations were intended to insure." *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir.1993) (citations omitted).

A plaintiff has the initial burden of establishing that a federal court complaint was timely filed and administratively exhausted, and if the defendant contests this issue, the plaintiff has the burden of establishing that he met the timely filing and exhaustion requirements. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233-34 (11th Cir. 2002).

The Court will consider documents related to the exhaustion of Litman's claims submitted by Mabus in support of his Motion because those documents are central to Litman's claims. *Ball*, 1:12-cv-132, 2013 WL 5592496 at *2 (M.D. Ga. Oct. 10, 2013). The Court notes that Mabus failed to file those documents with his Motion for Judgment on the Pleadings, although he makes reference to the documents in his brief in support. Mabus corrected this error by filing the documents as exhibits to his reply brief. (Doc. 45.)

**A. Exhaustion of Race-Based Hostile Work Environment Claim (Count Three)**

Mabus argues and the Deputy EEO Officer found that Litman did not initiate contact with an EEO counselor within forty-five days of some of the alleged discriminatory acts and therefore failed to exhaust his claims as to those acts. (Docs. 41-1 at 5; 45-1 at 17.) Specifically, Mabus argues that Litman did not contact an EEO counselor within forty-five days of the April 12, 2012 notice of suspension from contracting or the May 7, 2012 memorandum distributed widely to the Acquisition Community at Large and within the Marine Corps Logistics Command because Litman did not initiate contact with an EEO counselor until July 12, 2012.

The Court agrees and finds that Litman did not timely initiate EEO counseling as to the April 12, 2012 and May 7, 2012 incidents. As to whether Litman has alleged any basis for tolling the forty-five day requirement or finding that he otherwise satisfied the exhaustion requirement, the Court notes that Litman alleges that he requested an EEO counselor "on or about June 2012" regarding his race-based discrimination claims. (Doc. 24 at 3.) Litman alleges "there was much confusion" as to "who would handle the initial EEO complaint" and that he initially requested an EEO counselor in a letter to the Acquisition Integrity Office (AIO) opposing his contracting suspension (Doc. 24 at 12-13, 18.) Mabus addresses this allegation in his briefing, arguing that any request for an EEO counselor from an office other than an EEO office, such as the AIO, did not fulfill Litman's obligation to initiate counseling timely. (Doc. 41-1 at 5 n. 2.) Mabus argues that Litman does not allege that

6

he believed the AIO was an EEO office or other facts to justify his failure to initiate counseling with an EEO office and that his failure to timely initiate counseling with the proper office was particularly inexcusable because he is, in fact, an attorney. (*Id.*)

Filing a grievance or complaint with the incorrect office does not toll the forty-five day period. *Robinson*, 147 F. App'x at 924 (holding that a plaintiff's filing a discrimination grievance with his union did not toll the 45-day period). Litman has not alleged that he was misled into allowing the forty-five day period to lapse. Though he alleges that he "was told that Navy would make the determination because the complaint was being filed against the Washington, D.C.[-]located Navy Acquisition & Integrity Office," Litman does not allege that he was told to initiate counseling elsewhere. (Doc. 24 at 14.) Nor does Litman allege that he had not earlier discovered the alleged wrongs perpetrated against him or that he is entitled to equitable tolling for some other reason. The Court finds that Litman failed to initiate contact with an EEO counselor within forty-five days of the April 12, 2012 and May 7, 2012 incidents and has failed to allege any basis for tolling the forty-five day period. The Court therefore finds that Litman's allegations regarding those incidents, to the extent either of them serve as a basis for his remaining race-based hostile work environment and age discrimination claims, have not been exhausted.

Litman also alleges that on June 19, 2012 he received a letter from the Department of the Navy replying to his letter in opposition to the suspension notification. (Doc. 24 at 14.) Litman alleges that this letter was "malicious, defamatory, discriminatory and wreckless slander" against Litman. (*Id.*) Litman made allegations in his first EEO complaint that this letter "precipitated more humiliation and more defamatory and erroneous responses." (Doc. 45-1 at 5.) Hostile work environment claims are claims for continuing violations "composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The Court finds that Litman's timely exhaustion of the June 19, 2012 letter allegation does not make his race-based hostile work environment claim timely under a continuing violations theory. This case is similar to *Elec. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 234 (1976), where "an employee asserted that his complaint was timely filed because the date the alleged unlawful employment practice occurred was the date after the conclusion of a grievance arbitration procedure, rather than

the earlier date of his discharge." *Andrews v. Atl. Marine, Inc.*, Civ.A. 03-0280, 2005 WL 2665345 at *3 (S.D. Ala. Oct. 18, 2005) (citing *Elec. Workers*, 429 U.S. at 234)). The Supreme Court held that the date of the discharge was the operative date, not the date the grievance procedure concluded.  Here, the discrete, one-time employment events alleged by Litman should have put him on notice that a cause of action had accrued. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002).  The June 19, 2012 letter was about the AIO's basis for issuing the April 12, 2012 suspension notice.  Here, the date of Litman's suspension is the operative date, not the date he received further explanation from the AIO in the course of a grievance procedure, no matter how "defamatory and erroneous" he may have thought that explanation was, because the June 19, 2012 letter and Litman's continued suspension were merely "present consequence[s] of a one-time violation" at the time they were exhausted. *Id.*  Neither the June 19, 2012 discrete act nor Litman's continued suspension "make timely" acts that were not timely exhausted, and the June 19, 2012 letter cannot be an independent basis for Litman's race-based hostile environment claim since it is essentially derivative of the April 12, 2012 suspension notice.  *Morgan*, 536 U.S. at 112.

Further, Mabus argues that Litman failed to exhaust his race-based hostile work environment claim because it was not explicitly raised in either of his EEO complaints. (Doc. 41-1 at 5.) The Court finds that neither EEO complaint asserted a hostile work environment claim but only discrete incidents that Litman believed to be discriminatory. Even if those discrete incidents amount to a hostile work environment claim, the Court has already found that first EEO complaint, which addressed only the suspension of Litman's contracting privileges and related communications with the AIO, was not timely exhausted.

As to the second EEO complaint, Litman did not explicitly assert a hostile work environment claim but rather asserted several actions that he believed to be race-based discrimination against him, including: the removal of the nameplate on his office door and changes in his job responsibilities. (Doc. 45-1 at 24, 29, 31.)  In the second EEO complaint, Litman did not mention the allegations later raised in his Third Amended Complaint regarding the "whipping boy" comment, the incident involving Litman's colleagues laughing at his mugshot, or the individuals' calling Litman's office and requesting to speak with a "white lawyer."  In its previous order, the Court held that all of Litman's allegations in his Third

Amended Complaint, taken together and without information regarding their exhaustion, stated a claim for hostile work environment (Doc. 30 at 7-8.)

However, the Court finds that Litman's hostile work environment claim does not "appear to have grown out of" the acts identified in his second EEO complaint that may have been exhausted.[1] *Rodriguez v. Sec'y of Dep't of Veterans Aff.*, No. 14-13505, 2015 WL 3451757 at *1 (11th Cir. 2015) (holding that lawsuit allegations of "mocking" were not sufficiently related to the "discrete events including assignment of duties, performance evaluations, and compensation" plaintiff identified in her EEOC hostile work environment charge such that the EEOC was on notice of the need to investigate that claim). The "whipping boy" comment, the mugshot incident, and callers' requesting a "white lawyer" are not sufficiently "like or related to" the reassignment of Litman's duties or the removal of his nameplate to put the EEO office on notice of a hostile work environment claim such that Litman can "piggy back" those incidents on the two incidents that may have been timely exhausted in order to create an exhausted hostile work environment claim. *Id.* Further, the nameplate removal and the change in job responsibilities alone are not sufficient to support a hostile work environment claim, particularly without anything more than generalized allegations that the incidents were based upon Litman's race. *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012) (holding that a plaintiff's disparate treatment and hostile work environment claims should be dismissed where she failed to allege facts to support that gender, race or national origin played any role in the alleged adverse employment actions); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (listing the elements of a prima facie hostile work environment claim, including that the harassment was based upon a protected characteristic).

---

[1] The Court notes that it does not appear that Litman's second EEO complaint was exhausted since his formal complaint, signed March 20, 2013, was submitted the same day the above-styled action was filed in this Court, without Litman's awaiting a final agency decision on the complaint. 29 C.F.R. § 1614.206 ("A complaint must be filed with the agency that allegedly discriminated against the complainant."; § 1614.110 ("The final decision shall contain notice of the right to appeal to the Commission . . . [and] notice of the right to file a civil action in Federal district court . . . ); *cf. Brown v. Snow*, 440 F.3d 1259, 1262-64 (11th Cir. 2006) (holding that a Title VII claim was unexhausted where a federal employee filed suit after appealing to the agency's determination to the EEOC but before the 180 days the EEOC had to issue a decision had elapsed). However, Mabus does not argue that the second EEO complaint was unexhausted. (*See* Doc. 41-1.) In an abundance of caution, the Court will presume, without finding, for purposes of considering the pending Motion for Judgment on the Pleadings that the two incidents alleged in the second EEO complaint were exhausted.

For those reasons, the Court finds that Litman has not stated a race-based hostile work environment claim upon which relief can be granted because he failed to administratively exhaust a number of the incidents underlying his claim and the alleged incidents that may have been exhausted are not alone sufficient to support such a claim. Litman's Count Three Title VII race-based hostile work environment claim against Mabus is therefore **DISMISSED**.

### B. Exhaustion of ADEA Claim (Count Four)

Construing Litman's Third Amended Complaint liberally, the Court finds that the underlying allegedly discriminatory acts supporting Litman's ADEA claim are essentially the same as those already discussed with respect to his race-based hostile work environment claim: the suspension of his contracting privileges and related communications with the AIO, changes in Litman's job duties, the nameplate incident, the "whipping boy" comment, and individuals' calling his office to ask for a "white lawyer." (*See generally* Doc. 24.) The Court has already found that all of these incidents were unexhausted except for the change in Litman's job duties and the nameplace incident, which were raised in Litman's second EEO complaint and which Mabus has not argued were unexhausted.

Also, in support of his ADEA claim, Litman alleges that a new younger attorney was hired to take on Litman's job duties. (*Id.* at 19.) Litman alleges that this new attorney was promoted to Litman's paygrade after only twelve months. (*Id.*) The Court found in its Order on Defendants' Motion to Dismiss that Litman's allegations regarding the younger attorney, together with his other allegations, stated a claim for age discrimination. (Doc. 30 at 8-9.) The Court, having reviewed Litman's EEO complaints, finds that Litman did not raise any allegations about the younger attorney in his administrative complaints. (Doc. 45-1 at 1-6, 10, 16, 22, 29, 31.) Excluding the allegations about the younger attorney because they were unexhausted, the Court finds that Litman's Third Amended Complaint alleges only a bare assertion of age discrimination; without any allegations that a similarly situated younger attorney was treated differently or that age was the but-for cause of the alleged incidents, Litman's Third Amended Complaint fails to state a claim for age discrimination. The Court further finds that Litman has not alleged that he was "hampered by the action of the agency" and should be deemed to have complied with the exhaustion requirements as to the allega-

10

tions regarding the younger attorney. *Brown v. Snow*, 440 F.3d 1259, 1264 (11th Cir. 2006) (internal quotations and citations omitted). The Court therefore finds that Litman's ADEA claim has not been administratively exhausted and does not state a claim upon which relief can be granted and is therefore properly **DISMISSED**.

## CONCLUSION

The Court finds that Litman's Count Three Title VII race-based hostile work environment and Count Four ADEA age discrimination claims against Mabus do not state claims upon which relief can be granted because they were not administratively exhausted as is required before a plaintiff can bring a federal lawsuit on such claims and the alleged incidents that may have been exhausted are not alone sufficient to support such claims. For that reason, the Court **GRANTS** Defendant Mabus' Motion for Judgment on the Pleadings (Doc. 41). The only claims remaining in this action –Litman's Count Three Title VII race-based hostile work environment claim and Count Four ADEA age discrimination claim against Mabus– are **DISMISSED**.

**SO ORDERED**, this 11th day of September, 2015.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**